IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | |
|---|---|
| MELINDA CALVERT )<br>1600B Dash Point Road #5, )<br>Federal Way, Washington 98023 )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>MANATEE COUNTY GOVERNMENT )<br>1112 Manatee Avenue West )<br>Bradenton, Florida 34205, )<br>)<br>Serve: )<br>)<br>Douglas Polk, Esq. )<br>Manatee County Attorney's Office )<br>1112 Manatee County Avenue West )<br>Suite 969 )<br>Bradenton, Florida 34205, )<br>)<br>STACY NEEDHAM )<br>3707 Palmas Lane )<br>Sun City Center, Florida 33573, )<br>)<br>Serve: )<br>)<br>Douglas Polk, Esq. )<br>Manatee County Attorney's Office )<br>1112 Manatee County Avenue West )<br>Suite 969 )<br>Bradenton, Florida 34205, )<br>)<br>JAMES MICHAEL TURNER )<br>706 18th Ave. Dr. W )<br>Palmetto, Florida 34221, )<br>)<br>Serve: )<br>)<br>Douglas Polk, Esq. )<br>Manatee County Attorney's Office )<br>1112 Manatee County Avenue West ) | Case No._____<br><br>JURY TRIAL DEMAND |

1

|   |   |
|---|---|
| Suite 969 | ) |
| Bradenton, Florida 34205, | ) |
|  | ) |
| and | ) |
|  | ) |
| RICHARD GISOLF | ) |
| 6177 Hollywood Avenue | ) |
| North Port, Florida 34291, | ) |
|  | ) |
| Serve: | ) |
|  | ) |
| Douglas Polk, Esq. | ) |
| Manatee County Attorney's Office | ) |
| 1112 Manatee County Avenue West | ) |
| Suite 969 | ) |
| Bradenton, Florida 34205, | ) |
|  | ) |
| *Defendants*. | ) |

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is a Civil Action filed by Melinda Calvert ("Calvert") against the Manatee County government ("Manatee County"), a local municipal government, Stacy Needham ("Needham"), in her individual capacity, James Michael Turner ("Turner"), in his individual capacity, and Richard Gisolf ("Gisolf"), in his individual capacity, (collectively, the "Defendants") brought under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4335 ("USERRA").

2. Calvert alleges that Manatee County, Needham, Turner, and/or Gisolf violated USERRA when Manatee County failed to employ her after she reapplied for her prior Captain of Emergency Communications position in or around July 2019 because of her prior and ongoing military duties as a United States (U.S.) Air Force Reservist.

### JURISDICTION AND VENUE

2

3. Jurisdiction of this Court is proper pursuant to 38 U.S.C. § 4323(b)(3) of USERRA.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this is an action arising under the laws of the United States, specifically USERRA.

5. This Court has personal jurisdiction over each of the Defendants since each of the Defendants has substantial contacts with and transacts significant business in the state of Florida and in this judicial district.

6. Venue in this judicial district and division is appropriate pursuant to 28 U.S.C. § 1391(c) because Manatee County provides services to more than 385,000 individuals, and thus has contacts that would be sufficient to subject it to personal jurisdiction, in the greater Tampa Bay, Florida area.

7. Venue in this district and division is appropriate pursuant to 38 U.S.C. § 4323(c)(2) because Manatee County maintains a place of business in Bradenton, Florida.

## PARTIES

8. Calvert is a resident of the State of Washington and resides at 29810 23rd Avenue SW, Federal Way, Washington 98023. Calvert owns property in Manatee County, Florida and is attempting to move back there.

9. Manatee County's administrative building and/or principal place of business is located at 1112 Manatee Avenue West, Bradenton, Florida 34205.

10. Needham is a resident of the State of Florida and resides at 3707 Palmas Lane, Sun City Center, Florida 33573.

11. Turner is a resident of the State of Florida and resides at 706 18th Ave. Dr. W, Palmetto, Florida 34221.

12. Gisolf is a resident of the State of Florida and resides at 6177 Hollywood Avenue, North Port, Florida 34291.

**FACTUAL ALLEGATIONS**

13. In or about April 2008, Calvert joined the U.S. Air Force Reserve. Calvert experienced a delayed enlistment and did not attend basic training as an Air Force Reservist until about February 2009. From about February 2009 until approximately October 2014, Manatee County mostly supported Calvert's military service as she bounced around various shifts, as is standard in this type of position.

14. Manatee County is a local municipal government that provides services to more than 385,000 individuals in the greater Tampa Bay, Florida area. The Manatee County Public Safety Department is comprised of several divisions, including Animal Services, Marine Rescue, Community Paramedicine, Emergency Communications ("911"), Emergency Management, and Emergency Medical Services ("EMS"). The Emergency Communications Center for 911 calls, specifically, dispatches for Manatee County Emergency Medical Service, Marine Rescue and nine independent fire agencies. It processes all unincorporated police calls for Manatee County Sheriff's Office which is then dispatched by Sheriff Office employees. It takes wireless callers from Manatee County and all landline callers outside the City of Bradenton.

A. **Manatee County Hires Calvert**

15. In or about April 2007, Calvert started working for Manatee County as a trainee for their 911 division.

16. At the time, Manatee County hired employees through a temporary staffing agency while they underwent training, and employees were required to complete classroom training before shifting to more supervised and on-the-job training. This classroom training took

4

six (6) to eight (8) weeks at which time trainees took a test, and if the trainee scored high enough, he or she would be assigned a technical trainer on the floor to learn the additional skills required. Manatee County waited until they had enough people to hire for the classroom training and used the temporary staffing agency since some employees did not make it through the classroom training at the standards required to assume the position.

17. In or about August 2007, Calvert completed her classroom and technical training and Manatee County, rather than the temporary staffing agency, hired Calvert directly as a Dispatcher I. Calvert continued to work her way up the ranks from Dispatcher I through Dispatcher III until she reached a management position as a Captain of Emergency Communications with Manatee County in November 2015.

**B. Manatee County Begins Discriminating Against Calvert Because of Her Military Service**

18. In or about October 2014, Manatee County started disapproving of Calvert's requested leave to comply with her military orders.

19. Calvert's supervisor at the time, Melody Bonami ("Bonami"), and the Public Safety Director, Ron Koper ("Koper"), refused to allow Calvert to use her vacation time to offset being on military leave to attend a Unit Training Assembly ("UTA").

20. Manatee County maintains two (2) separate pay banks for military leave. First, they have "Military Leave" pay to cover drill weekends, which maxes out at two hundred and forty (240) hours. Second, Manatee County has "Military Call" pay for any set of orders that are thirty (30) days or longer. Manatee County will pay out of the military call pay for the first thirty (30) days. Within Manatee County, it was a common practice if you maxed out your allotted "Military Leave" or "Military Call" pay, to use your own vacation or comp-time in its place, pursuant to USERRA.

21. At this time, half of Calvert's unit was deployed, and the Air Force requested that all traditional reservists complete double the standard amount of "annual tour" because they could not complete the home station daily operations with the amount of personnel remaining. Ultimately, drill is just the weekend duty, but the Air Force also needed help during non-drill time.

22. After already being denied vacation time to cover a drill weekend, Calvert then informed Manatee County management that she was also going to be placed on thirty (30) day orders, which prompted Bonami and Koper to deny Calvert's "Military Call" pay request. Koper took it upon himself to determine Calvert's orders were for training. He advised Calvert that her orders were not active orders that fit the criteria of "Military Call" pay. However, Calvert's orders were certified as active duty orders for over the thirty (30) day time frame, which was the only requirement for the pay.

23. Calvert attempted to explain how Manatee County's policies regarding military leave and pay violated USERRA to Bonami and Koper, but they refused to listen. Additionally, Koper told Calvert that her interpretation of USERRA was incorrect after she noted Manatee County's obligations under the law.

24. Calvert does not know why Koper had anything to do or say about Calvert's military or personal leave approval. Prior to this specific incident, Calvert would submit her timecard directly to her immediate supervisor, who then would pass the timecard along to Bonami, Calvert's second-line supervisor, for approval. Koper was previously not involved in approving Calvert's leave or timecards.

25. In or about October 2014, Calvert called someone with the Air Force's USERRA hotline. The hotline then assigned Calvert a USERRA Representative who discussed at length

the issues Calvert was having with her employer. The representative then spoke with Koper and Manatee County's Human Resources ("HR") Director to resolve the issue.  The USERRA Representative telephoned Koper and explained that Koper (and Manatee County by extension) was violating USERRA.  Koper's response to the USERRA Representative was that the representative was incorrect in his interpretation of USERRA.  The USERRA Representative then called Manatee County's HR Director.  The HR Director was willing to help and explained that this was the first he was hearing about this problem. However, when Calvert began her initial course of action, she emailed her division's HR liaison, Theresa Kersey ("Kersey"), who agreed that Bonami could in fact deny Calvert's vacation request.  The HR Director asked Calvert not to take legal action and promised to remedy the issue.  Calvert was paid for her vacation time to supplement her lower military pay while on a UTA.  Additionally, the HR Director, approved military pay while Calvert completed orders at her home station, Homestead Air Reserve Base, Florida.

26. In or about November 2014, Manatee County terminated Koper's employment. Calvert does not know or have any specific information regarding why Manatee County terminated Koper.  However, Calvert is aware of several problems with the department at the time, any one of which could have formed the basis for his termination.

27. Although Manatee County did not directly take any overt actions to deny Calvert's military leave and pay after October 2014, Calvert received many eyerolls and disparaging comments from other Manatee County colleagues and managers whenever she took leave because of her military orders.

    **C. Calvert Leaves Manatee County**

28. On or about March 4, 2018, Calvert left Manatee County to move with her husband to Seattle, Washington.

29. From in or about June until December 2018, Calvert accepted a six (6) month short term temporary position as an Emergency Operations Readiness Coordinator for the King County government in Seattle, Washington.

30. In or about March 2019, Calvert started working as a Dispatcher for the King County Sherriff's Office in Renton, Washington. Currently, Calvert is still working there.

**D. Manatee County Fails to Employ Calvert Due to Her Past Military Duties**

31. In or about July 2019, Calvert reapplied for her prior position as a Captain of Emergency Communications with Manatee County.

32. Calvert applied for the position with Manatee County because she and her husband were each looking to move back to Florida and be closer to their families.

33. Calvert passed the initial assessment and advanced through the first round of interviews, which required Calvert to pre-record video responses via Skype.

34. On or about August 28, 2019, Manatee County granted Calvert a formal Skype interview.

35. Calvert was interviewed by a panel of three (3) Manatee County employees including, Needham, the Acting Chief, Turner, the C Shift Captain, and Gisolf, the Acting Operations Manager.

36. At the time of Calvert's application, the department lacked a permanent Public Safety Director, which resulted in several individuals, including those on the hiring committee, being placed in positions outside their selected role. In or about May 2019, Bob Smith, the Public Safety Director, left for another job, which created a vacancy at the Director level. The

Division Chief, Jake Saur ("Saur"), then replaced Smith in an acting capacity. Then, Saur appointed Needham to be the Division Chief. Needham appointed Gisolf to be in charge of the floor staff, including the Captains. Since these were only temporary appointments, they did not have to go through the selective hiring process, and the HR department was not involved in the decision making.

37. On or about August 30, 2019, Manatee County informed Calvert that she was not selected for the Captain of Emergency Communications position.

38. Manatee County selected Tiffany Lalli ("Lalli") for the Captain's position. Compared to Calvert, Lalli had about half the public safety experience and was not a better candidate for the job. Lalli was previously a subordinate on Calvert's shift. Calvert initially trained Lalli on the radios and dispatch protocol. Calvert also trained Lalli on several supervisor duties before resigning to help the shift during the transitional period of Manatee County hiring Calvert's replacement. Additionally, Lalli is not in uniformed service and does not have any military service background.

39. Back in or about April 2018, Gisolf was hired as Calvert's replacement from another agency outside of Manatee County. Gisolf was only with Manatee County as Calvert's successor for less than eighteen (18) months before being placed on the interview panel to interview his own predecessor, Calvert, for the Captain of Emergency Communications position. Lalli was the only candidate that Gisolf knew because he served as her supervisor until his temporary appointment to the Operations Manager position.

40. In or about the end of August 2019, a Manatee County Emergency Communications Center employee on the interview panel brought up Calvert's military duties

9

and prior pattern of military leave taking during a conversation about the hiring decision for the Captain of Emergency Communications position.

41. During the conversation, this panel member said that while Calvert was previously employed by Manatee County, they were not happy about all the time Calvert had been away from her civilian duties for military reserve duty and felt Calvert was "fudging" her military duty weekends to avoid her work weekends.

42. Additionally, it was also said by one of the panel members that it was not "cool" that after being gone on a deployment to Afghanistan that Calvert came back and took vacation, and that she left her shift "hanging" due to her military service.

## COUNT I
### Discrimination in Violation of the
### Uniformed Services Employment and Reemployment Rights Act of 1994,
### 38 U.S.C. § 4311

43. Calvert hereby incorporates and realleges the allegations set forth in the foregoing paragraphs as though fully alleged herein.

44. Calvert is an "employee" as the term is defined by 38 U.S.C. § 4303(3).

45. Manatee County is an "employer" as the term is defined by 38 U.S.C. § 4303(4)(A).

46. Needham is an "employer" as the term is defined by 38 U.S.C. § 4303(4)(A).

47. Turner is an "employer" as the term is defined by 38 U.S.C. § 4303(4)(A).

48. Gisolf is an "employer" as the term is defined by 38 U.S.C. § 4303(4)(A).

49. Calvert is a member of the U.S. Air Force Reserves, a uniformed service as defined by 38 U.S.C. § 4303(16).

50. Calvert's supervisors and colleagues and all the Defendants are aware of Calvert's previous and current military service.

51. A person who has performed service in a uniformed service shall not be denied employment or any benefit of employment by an employer on the basis of that service. 38 U.S.C. § 4311.

52. Benefits of employment means "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2).

53. Calvert was denied employment and lost a benefit of employment when each of the Defendants failed to hire Calvert on or about August 2019.

54. Calvert's performance of service with the U.S. Air Force was a substantial or motivating factor in each Defendant's decision to not employ Calvert on or about August 2019.

55. Each Defendant's unlawful motivation is evidenced by both direct and circumstantial evidence of Manatee County's employees and decisionmakers when they did not hire Calvert for the B Shift Captains position in or about August 2019 because they were not happy about all the time Calvert had been away from her civilian duties, they felt Calvert was "fudging" her military duty weekends to avoid her work weekends, and they thought it was not "cool" that after being gone on military reserve duty Calvert came back and took vacation, and that she left her shift "hanging" due to her military service.

56. For violations of 38 U.S.C. § 4311, Calvert is entitled under 38 U.S.C. § 4323 to reparations, including, but not limited to the following:

a. hiring, reinstatement or upgrading of Calvert, with or without backpay;

b. economic damages including frontpay and backpay;

c. compensatory damages;

d. liquidated damages;

e. equitable relief;

f. reasonable attorney fees;

g. expert witness fees;

h. litigation expenses;

i. court costs; and

j. any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Calvert prays this Honorable Court for Judgment against the Defendants, and as against each of them, jointly and severally, in an amount of economic damages, compensatory damages, and punitive damages and equitable relief to be determined at trial, plus attorneys' fees, costs of this action, and any other relief this Honorable Court deems just and proper to award.

## JURY DEMAND

Calvert demands a trial by jury for any and all issues proper to be so tried.

Dated: April 2, 2021                              Respectfully submitted,

                                                                                 /s/ *R. Scott Oswald*
R. Scott Oswald (Florida Bar #158437)
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com

*Counsel for Plaintiff Melinda Calvert*